# Third District Court of Appeal

## State of Florida

Opinion filed October 6, 2022.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D21-1633
Lower Tribunal No. 15-26015
_____


**Jonathan Michael Schuler,**
Appellant,

vs.

**Sandy T. Fox, P.A.,**
Appellee.


An Appeal from the Circuit Court for Miami-Dade County, Alan Fine, Judge.

Litigation Lawyers, Professional Association, and Stephen B. Rakusin (Ft. Lauderdale), for appellant.

Kogan Law, P.A., and Lyudmila Kogan (Hallandale), for appellee.


Before LINDSEY, MILLER, and LOBREE, JJ.

LINDSEY, J.

Appellant Jonathan Schuler (Defendant below) appeals from two non-final orders that partially grant and partially deny his motion to quash service of process and vacate a default final judgment.[1] Schuler argues the trial court erred in denying his motion to vacate because the default judgment improperly awarded unliquidated damages. Schuler also argues the trial court erred in denying his motion to quash because the Return of Service was facially invalid. We affirm because the contract damages are liquidated since the exact amount can be determined from the pleadings. We also conclude that Schuler failed to meet his burden to challenge service of process.

## I.    BACKGROUND

In November 2015, Appellee Sandy T. Fox, P.A. (the "Law Firm") filed a Complaint against Schuler, its former client, to recover unpaid attorney's fees for legal services rendered in a paternity action. A clerk's default was entered against Schuler in January 2016, and a final judgment was entered against Schuler in February 2016 in the amount of $59,494.73. This amount included $39,286.36 stemming from a written contract for legal services and

---

[1] We have jurisdiction pursuant to Florida Rule of Appellate Procedure 9.130(a)(5) ("Orders entered on an authorized and timely motion for relief from judgment") and 9.130(a)(3)(C)(i) (jurisdiction of the person, which includes the validity of service of process).

2

$18,488.02 in equitable relief for services rendered in an appeal in the paternity action.

In September 2020, the Law Firm, through counsel, filed two motions for writs of garnishment directed at two of Schuler's bank accounts. In November 2020, Schuler filed a motion to quash service of process and to vacate the 2016 final judgment. Schuler argued the default was improperly entered because he was never served. More specifically, Schuler argued as follows:

> 7. In the return, the process server incorrectly claimed that an actual service of process was effected on the Defendant with description of "Age: 44, Sex: M, Race/Skin Color: White, Height: 6'1, Weight: 220, Hair: Balding, Glasses: N."
>
> 8. However, Jonathan Schuler was living in Illinois. On November 17, 2015, he was 32 years old, 6 feet 2 inches tall and weighed 178 pounds. The individual Summons was not personally served upon Jonathan Schuler. Apparently, the Summons and Complaint were delivered to some other person who was not authorized to accept service of process on behalf of Jonathan Schuler.

(Emphasis in original).

Schuler also argued the lower court improperly entered a final judgment without a trial and without 30 days' notice on the Law Firm's claim

3

for unliquidated damages in violation of Florida Rule of Civil Procedure 1.440(c).[2]

The trial court conducted two separate hearings on Schuler's motion. First, on December 14, 2020, the court held a non-evidentiary hearing on the damages issue. Following the hearing, and a little over a week later, the court entered an order finding that the $39,286.36 in damages for breach of contract (Count I) were liquidated, and therefore, the judgment was valid and enforceable as to those damages. However, the court also found that the $18,488.02 in damages for unjust enrichment (Count VI) and quantum meruit (Count VII) were unliquidated, and the judgment was vacated as to those damages.[3]

---

[2] Florida Rule of Civil Procedure 1.440(c), provides as follows:

> **Setting for Trial.** If the court finds the action ready to be set for trial, it shall enter an order fixing a date for trial. Trial shall be set not less than 30 days from the service of the notice for trial. By giving the same notice the court may set an action for trial. In actions in which the damages are not liquidated, the order setting an action for trial shall be served on parties who are in default in accordance with Florida Rule of General Practice and Judicial Administration 2.516.

[3] Following the trial court's determination that some of the damages were unliquidated, the Law Firm elected to keep the breach of contract (Count I) judgment in place and waive the equitable relief in Counts VI and VII. As an additional measure, the Law Firm filed a Notice of Voluntary Dismissal of all counts except Count I.

The second hearing occurred in April of 2021. The trial court held an evidentiary hearing on the remaining issue in Schuler's Motion—whether he was personally served with the Complaint and Summons. At the hearing, Schuler and Kathy Shapck, Schuler's girlfriend at the time of service, testified that he was living in Chicago on November 17, 2015, the date of service. In support, Schuler produced Florida Power and Light records showing the electricity had been turned off at his Hollywood, Florida address by November 15.

The court also heard testimony from the process server, who testified that his affidavit of service affirmed that he served Schuler because someone at the Hollywood, Florida address identified himself as Schuler. Photos taken by the process server were also admitted into evidence. The photos showed a black SUV resembling Schuler's black Porsche Cayenne and a moving trailer. Schuler testified that his friend Brian packed the moving trailer and that Brian transported Schuler's Cayenne to Illinois. Finally, Schuler's checking account statements were admitted into evidence, showing debit card charges in Florida between November 12 and November 17, including a November 17 charge in Hollywood, Florida at Panera. Schuler testified that he had given his debit card to Brian. Nobody named Brian testified at the hearing.

At the conclusion of the hearing, the court made the following observations:

> THE COURT: I will say this at this point: I accept the evidence that Mr. Schuler was in the process of moving during November, that the container that was in the driveway was the container that either already contained or was about to contain, during the course of that day, the contents that were in the house that he wanted moved to Chicago.
>
> The black SUV may or may not have been Mr. Schuler's. It sure does look a lot like a Porsche Cayenne, but I'm not an expert. And if it was, that's not definitive, because Mr. Schuler did testify that he's not the person that drove it to Chicago, that it was either, I think he said his sister or Brian.
>
> The problem here is that the -- all those credit card receipts, excuse me, debit card charges long after Mr. Schuler left. And his testimony that he gave the debit card to Brian without more and without any other explanation and without showing any debit or credit card charges made in Chicago or somewhere else is a tough hurdle when you have the burden of showing by clear and convincing evidence that the service was not made.

On July 14, 2021, the court entered a detailed order finding that the process server's Return of Service was regular on its face and that Schuler failed to present clear and convincing evidence that he was not served. Based on the evidence and testimony, the court did not find Schuler's or Shapck's testimony credible. Accordingly, the court denied Schuler's motion to quash service of process and to vacate the entire default final judgment.

6

Schuler timely appealed.

## II.    ANALYSIS

Schuler raises two primary arguments on appeal.  First, Schuler argues that all claims for attorney's fees are unliquidated damages claims.  Second, Schuler argues that the return of service was irregular on its face because the description did not match his description, and moreover, that the evidence reflected Schuler was not served.

### 1. Liquidated and Unliquidated Damages

Whether damages are liquidated or unliquidated is a legal issue subject to de novo review.  Law Offices of Granoff & Kessler, P.A. v. Glass, 305 So. 3d 345, 347 (Fla. 3d DCA 2020), reh'g denied (May 18, 2020), review denied, SC20-734, 2021 WL 1157836 (Fla. Mar. 26, 2021) (citing Musi v. Credo, LLC, 273 So. 3d 93, 95-96 (Fla. 3d DCA 2019)).

There is no dispute a default final judgment is void if it awards unliquidated damages in violation of the notice and trial requirements in Florida Rule of Civil Procedure 1.440(c).  See, e.g., Rodriguez-Faro v. M. Escarda Contractor, Inc., 69 So. 3d 1097, 1098 (Fla. 3d DCA 2011) ("In Florida, it is well settled that a defaulting party is entitled to notice and an opportunity to be heard when the amount of damages is unliquidated.").

7

In DYC Fishing, Ltd. v. Martinez, 994 So. 2d 461, 462-63 (Fla. 3d DCA 2008), this Court explained that the difference between liquidated and unliquidated damages depends on whether the exact amount can be determined from the pleadings:

> Damages are liquidated when the amount to be awarded can be determined with exactness from a pleaded agreement between the parties, by an arithmetical calculation, or by application of definite rules of law. See Bowman v. Kingsland Dev., Inc., 432 So. 2d 660, 662 (Fla. 5th DCA 1983). Damages are unliquidated "if the ascertainment of their exact sum requires the taking of testimony to ascertain facts upon which to base a value judgment." Id. at 663. When unliquidated damages must be determined as a result of a default, the defaulting party "is entitled to notice of an order setting the matter for trial, and must be afforded an opportunity to defend." Viets v. Am. Recruiters Enters., Inc., 922 So. 2d 1090, 1095 (Fla. 4th DCA 2006); see also Bowman, 432 So. 2d at 663 ("A defaulting party has a due process entitlement to notice and opportunity to be heard as to the presentation and evaluation of evidence necessary to a judicial determination of the amount of unliquidated damages.").

Here, the exact amount of the attorney's fees can be determined from the Complaint and its attachments, which include the parties' Fee Agreement and invoices. See Cellular Warehouse, Inc. v. GH Cellular, LLC, 957 So. 2d 662 (Fla. 3d DCA 2007) (finding that a damages claim for failure to make payments under the terms of a contract was liquidated whereas damages for lost business profits, stolen assets, and operating expenses were

8

unliquidated since they were not established by the parties' agreement and instead required testimony to ascertain the amount).

According to the Complaint, Schuler breached the attorney-client Fee Agreement by failing to pay $36,631.15.[4]  The Fee Agreement, which is attached to the Complaint, sets forth the agreed hourly rate for the attorneys at the Law Firm.  Moreover, over 100 pages of detailed invoices, which are also attached to the Complaint, list the amounts charged over the course of litigation for the various services at the applicable hourly rate.  The invoices also show that Schuler made several payments.[5]  Consistent with the allegations in the Complaint, the invoices show that the final total balance due is $36,631.15.

Even though the exact amount of damages can be determined from the pleadings, Schuler argues that all attorney's fees are unliquidated.  We disagree.  Although "every claim of damages for the *reasonable value* of services is a claim for unliquidated damages[,]" Bowman, 432 So. 2d at 663

---

[4] Default judgment was entered in the amount of $39,286.36, which includes the principal amount of $36,631.15 plus contractual interest and costs.

[5] The Fee Agreement and invoices state that the client has ten days to notify the Law Firm in writing of any errors or discrepancies in billing.  Schuler does not claim he disputed the billing.

(emphasis added), not every claim for attorney's fees requires a reasonableness determination.

In Glass, this Court explained the difference between an action against a former client for attorney's fees based on agreed hourly amounts and reasonable attorney's fees sought by a prevailing party against an opposing party. 305 So. 3d at 347-50. This Court held that when fees are sought as compensatory damages against a client for breach of an hourly rate contract, as opposed to reasonable fees (e.g., prevailing party fees), no independent expert testimony regarding reasonableness is necessary. Id. at 350.

Here, the Law Firm is not seeking reasonable fees, but fees from a former client based on contractual hourly amounts and regular invoices for time expended. The amount is not conjectural or uncertain until a fact finder makes a value judgment. See Roggemann v. Boston Safe Deposit & Tr. Co., 670 So. 2d 1073, 1075 (Fla. 4th DCA 1996) ("A 'reasonable attorney's fee' is an unliquidated item of damages because testimony must be taken to ascertain facts upon which a judge or jury can base a value judgment."); Papadakos v. Spooner, 186 So. 2d 786, 789 (Fla. 3d DCA 1966) ("However, the amount of a reasonable attorney's fee is entirely conjectural and is clearly uncertain until either a judge or jury by an exercise of judgment makes a determination.").

10

Damages in this instance can be determined with exactness from the Complaint and the attached Fee Agreement and invoices.[6] Since Schuler's default admits the allegations in the Complaint, and the fees require no reasonableness determination, no evidentiary findings or testimony was necessary to fix the amount. See Bowman, 432 So. 2d at 662 ("A default admits every cause of action that is sufficiently well-pled to properly invoke the jurisdiction of the court and to give due process notice to the party against whom relief is sought. A default also admits the plaintiff's entitlement to *liquidated* damages due under the pleaded cause of action, but not *unliquidated* damages."). We therefore affirm the trial court's denial of Schuler's motion to vacate the default judgment as to breach of contract because the contractual attorney's fees are liquidated damages.

## 2. Service of Process

---

[6] Though Schuler has cited some authority for the proposition that attorney's fees sought against a former client are unliquidated, the fee agreements in those cases did not involve an agreed hourly rate, as here, but instead necessarily required a reasonableness determination to ascertain the exact amount. See Ake v. Chancey, 13 So. 2d 6, 7 (Fla. 1943) ("The contract provided that a reasonable compensation be paid Chancey, the amount of which was to be fixed by H. C. Rorick as trustee for the bondholders' committee."); Papadakos v. Spooner, 186 So. 2d 786, 786–87 (Fla. 3d DCA 1966) ("The complaint brought by [the attorney] against [the clients] alleged, in part, that . . . (5) [the client] agreed 'that a reasonable fee would be paid to [the attorney].'").

In Koster v. Sullivan, 160 So. 3d 385, 389 (Fla. 2015), the Florida Supreme Court explained that a return of service is regular on its face if it includes the statutory factors contained in section 48.21, Florida Statutes:

> The party who seeks to invoke the court's jurisdiction bears the burden of proving proper service. This burden requires the party to demonstrate that the return of service is, under section 48.21, facially valid or regular on its face. A return of service that is regular on its face must include the statutory factors contained in section 48.21. If the return is regular on its face, then the service of process is presumed to be valid and the party challenging service has the burden of overcoming that presumption by clear and convincing evidence.

(Citations and quotation marks omitted).

Schuler argues that the Return of Service was not regular on its face because the written description of the person served did not exactly match Schuler's description. A written description, however, is not one of the factors listed in section 48.21, and Schuler has not cited any authority that supports the proposition that a return of service containing a description that does not exactly match the description of a person served renders the return facially irregular.[7]

---

[7] The facial irregularity cases Schuler cites are distinguishable as they involve failure to comply with the statutory factors required for service of process. See Re-Emp. Servs., Ltd. v. Nat'l Loan Acquisitions Co., 969 So. 2d 467, 472 (Fla. 5th DCA 2007) ("In the present case, the return of service was defective on its face because it not only failed to accurately note the

12

The statutory factors set forth in section 48.21 are, in pertinent part, as follows:

> (1) Each person who effects service of process shall note on a return-of-service form attached thereto the date and time when it comes to hand, the date and time when it is served, the manner of service, the name of the person on whom it was served, and, if the person is served in a representative capacity, the position occupied by the person. The return-of-service form must list all pleadings and documents served and be signed by the person who effects the service of process. However, a person who is authorized under this chapter to serve process and who effects such service of process may sign the return-of-service form using an electronic signature.

Here, the Return of Service included all the required statutory factors in section 48.21 and was therefore regular on its face. Thus, Schuler bore the burden of challenging the validity of service by clear and convincing

date and time the process came to hand, but also it actually stated that it came to hand before the summonses were even issued."); Romeo v. U.S. Bank Nat. Ass'n, 144 So. 3d 585, 587 (Fla. 4th DCA 2014) ("Here, the affidavits of service stated that the process server received the alias summonses on September 10th, but they were not issued until September 12th. Thus, the affidavits are defective on their face under section 48.21 because they actually state that they 'came to hand before the summonses were even issued.'"); Bank of Am., N.A. v. Bornstein, 39 So. 3d 500, 504 (Fla. 4th DCA 2010) ("Neither the original nor the amended return of service showed the absence of the statutorily prescribed superior classes of persons who could have been served."); Bennett v. Christiana Bank & Tr. Co., 50 So. 3d 43, 45 (Fla. 3d DCA 2010) ("The process server's notes contain no evidence of compliance with [§ 48.031(1)(a), Fla. Stat. (2009)].").

13

evidence. Based on the record, the trial court did not err in concluding that Schuler failed to meet this burden. There was ample evidence below that Schuler was personally served, including the process server's testimony, photographs, and Schuler's checking account statements showing transactions taking place in Florida. Moreover, the only evidence that Schuler was in Chicago at the time of service was his own testimony and that of Shapck, his girlfriend, neither of whom the trial court found credible. Schuler produced no other corroborating evidence.

## III. CONCLUSION

The breach of contract damages in this case are liquidated because the exact amount can be determined from the pleadings; therefore, we affirm the trial court's denial of Schuler's motion to vacate the default judgment as to Count I (Breach of Contract). We also affirm the trial court's denial of Schuler's motion to quash service of process because Schuler has not shown that the Return of Service was facially irregular, and he did not carry his burden of challenging the validity of service by clear and convincing evidence.

Affirmed.